UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donna Hernandez, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>RxC Acquisition Company and CoverMyMeds, LLC,<br><br>Defendants. | Case No.: 2:23-cv-02154-RJC<br><br>SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND |

COMES NOW Plaintiff, DONNA HERNANDEZ, by and through her undersigned counsel, and hereby brings this Second Amended Collective Action Complaint against Defendants, RxC ACQUISITION COMPANY and COVERMYMEDS, LLC and states as follows:

**INTRODUCTION**

1. This is a collective action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Customer Service Representatives ("CSRs") of Defendants to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendants' call center, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3. Defendants subjected Plaintiff, and those similarly situated, to Defendants' policy and practice of failing to compensate its CSRs for their necessary boot-up and call ready work, which resulted in the failure to properly compensate CSRs as required under applicable federal and state laws.

4. Plaintiff seeks a declaration that her rights and the rights of the FLSA Collective were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative Collective may be entitled.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7. Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

8. Defendants' CSRs, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

9. This Court has personal jurisdiction over Defendant RxC Acquisition Company because it maintains its principal place of business in this District.

10. This Court has personal jurisdiction over Defendant CoverMyMeds, LLC because,

upon information and belief, Defendant CoverMyMeds, LLC will consent to personal jurisdiction in this District for the purposes of this matter.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

## PARTIES

12. Plaintiff is an individual who resides in the County of Maricopa, City of Peoria, Arizona. Plaintiff worked as a Customer Service Representative from September 2012 to March 2022. Plaintiff executed her Consent to Sue form, attached hereto as Exhibit B.

13. Defendant RxC Acquisition Company is a Delaware corporation with its principal place of business in Pennsylvania.

14. Defendant CoverMyMeds, LLC is a Delaware entity with its principal place of business in Ohio.

15. Defendants are wholly owned subsidiaries of McKesson Corporation.

16. Defendants operate under a unified brand called "CoverMyMeds." *See CoverMyMeds*, https://www.mckesson.com/About-McKesson/Businesses/CoverMyMeds/ (last visited September 22, 2023).

17. Defendants administer copay assistance and pharmacy voucher programs. Defendants connect patients to drug therapies on behalf of their pharmaceutical company clients by enrolling patients in copay assistance plans or pharmacy voucher programs that reimburse pharmacies for all or part of drug therapy costs.

## GENERAL ALLEGATIONS

18. Defendants employed Plaintiff, and those similarly situated, as an hourly call center Customer Service Representative ("CSR"). Defendants assign CSRs, like Plaintiff, to answer

customer calls from their clients' patients.

19.     Plaintiff's primary job duties included answering phone calls and providing customer service. More specifically, this included speaking to patients, medical providers, and insurance companies regarding payment options for medications and drug therapies, like copayment programs, vouchers, and coupons.

20.     Plaintiff regularly worked at least 40 hours per workweek.

21.     Regardless of whether Defendants scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of her job duties as a CSR. Defendants never compensated Plaintiff for this necessary time worked off-the-clock.

22.     29 C.F.R. § 553.221 provides:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

23.     29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A.     *Unpaid Boot-Up and Call Ready Work.*

24.     Plaintiff, and those similarly situated, were tasked with providing customer service on behalf of Defendants' clients by use of Defendants' telephones, computers, and the programs accessible from Defendants' computers.

25.     To access Defendants' systems, Plaintiff, and all other current and/or former CSRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple

4

computer programs, servers, and applications. Once this boot-up and call ready work is completed, Plaintiff, and all other current and/or former CSRs, must log in to Defendants' phone system to take their first call at their scheduled shift start time.

26. In addition to completing the process described above, CSRs who worked remotely also had to log in to Defendants' virtual private network (VPN).

27. Defendants do not compensate Plaintiff, and all other current and/or former CSRs, until they have logged into the phone system and marked themselves "available" to take incoming calls.

28. The boot-up and call ready work regularly takes up to 10 minutes per shift, or more if technical issues arise. Defendants did not compensate Plaintiff and CSRs for this time.

29. Regardless of how long the boot-up and call ready work takes, Defendants did not allow Plaintiff, and all other current and/or former CSRs, to clock in before their scheduled shift start time.

30. The boot-up and call ready work Plaintiff, and all other current and/or former CSRs, must complete before they begin being compensated is the same regardless of whether they worked in the physical call center or worked remotely.

31. The boot-up and call ready work is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendants' business.

32. Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CSRs, directly benefits Defendants.

**B.**   ***Defendants' Policy and Practice of Off-the-Clock Work Violates Federal Law.***

33. At all times relevant, Defendants suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform off-the-clock boot-up and call ready work by not

compensating CSRs until after they completed the boot-up and call ready work.

34. Defendants knew or should have known that they must pay their employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

35. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CSRs, for their compensable boot-up and call ready work performed in any amount.

36. Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendants to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

37. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CSRs, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

38. For example, upon information and belief, during the workweek of August 2, 2021 to August 6, 2021, Defendants paid Plaintiff for over 40 hours of work. However, the hours Defendants paid Plaintiff did not include the boot-up and call ready work as alleged herein. Had Defendants properly paid Plaintiff for all hours worked during this pay period, then they would have paid her additional overtime wages equal to the uncompensated boot-up and call ready work.

39. Defendants are aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendants' own payroll records reflect the number of hours they paid Plaintiff.

40. Defendants are aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendants' own payroll records reflect the hourly rate it paid Plaintiff. For example, upon information and belief, Plaintiff's hourly rate for the exemplar week

noted above was $24.76 per hour.

41. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former hourly CSRs working in Defendants' call center or remotely for their compensable boot-up and call ready work performed in workweeks totaling totaling in excess of 40 hours at the proper legal rates, including overtime premiums.

42. In reckless disregard of the FLSA, Defendants adopted and then adhered to their policy, plan, or practice of employing Plaintiff, and all other current and/or former CSRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all overtime performed by Plaintiff, and all other current and/or former CSRs, in violation of the FLSA.

### C.   *Recordkeeping.*

43. The Arizona wage and hour laws require that "[e]mployers shall maintain payroll records showing the hours worked for each day worked, and the wages and earned paid sick time paid to all employees for a period of four years." *See* A.R.S. § 23-364.

44. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

45. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

46. Upon information and belief, Defendants failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Arizona wage and hour law because it failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CSRs' payroll records.

47. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

48. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Service Representatives, and/or other job titles performing the same or similar job duties, who worked as direct hires for RxC Acquisition Company at any time in the last three years. All CSRs placed to work at RxC Acquisition Company by a staffing company are expressly excluded.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

---

[1] Plaintiff specifically reserves the right to amend the definition and/or propose subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

50. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

51. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendants' practices, policies, or plan of not paying its CSR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

52. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center workers over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records; and from input received from members of the FLSA Collective as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

53. Plaintiff shares the same interests as members of the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar,

if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
### (FLSA Collective)

54. Plaintiff re-alleges and incorporates all previous paragraphs herein.

55. At all times relevant to this action, Defendants were an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

56. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

57. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

58. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

59. The position of Customer Service Representative is not exempt from the FLSA.

60. Defendants' other job titles performing similar customer service representative job duties are not exempt from the FLSA.

61. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

62. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

63. Defendants violated the FLSA by failing to pay Plaintiff the federally mandated

overtime premium for all hours worked in excess of 40 hours per workweek.

64. Upon information and belief, Defendants have corporate policies of evading overtime pay for its hourly workers.

65. Defendants' violations of the FLSA were knowing and willful.

66. By failing to compensate their hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate workers at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendants in the same or similar position as Plaintiff.

67. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Collective.

68. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, a worker is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

  a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

  b. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated

11

    individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c.  An Order designating Plaintiff to act as the Class Representative on behalf of the FLSA Collective;

d.  An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

e.  An Order declaring that Defendants violated their obligations under the FLSA;

f.  An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week;

g.  An Order awarding liquidated damages to Plaintiff and the FLSA Collective, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

h.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

i.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

j.  An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through her undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 20, 2024        Respectfully submitted,

                 *s/ Zackary S. Kaylor*
                 Jacob R. Rusch (MN Bar #0391892)*
                 Zackary S. Kaylor (MN Bar #0400854)*
                 **JOHNSON BECKER, PLLC**
                 444 Cedar Street, Suite 1800
                 Saint Paul, MN 55101
                 T: 612-436-1800
                 F: 612-436-1801

E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

Ken Grunfeld (PA Bar No. 84121)
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
65 Overhill Road
Bala Cynwyd, PA 19004
T: 954:525-4100
E: grunfeld@kolawyers.com

*Local Counsel for Plaintiff*

13